# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JULIE HERZOG                                         CIVIL ACTION

VERSUS                                               No. 13-5125

ERIC H. HOLDER, JR. ET AL.                      SECTION I

## ORDER AND REASONS

Before the court are cross-motions[1] for summary judgment filed by both plaintiff and defendants, to which both sides filed oppositions.[2] For the following reasons, defendants' motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED**.

## BACKGROUND

Plaintiff, Julie Herzog, is a U.S. citizen.[3] On July 9, 2001, plaintiff married Frederico Salas Martinez ("Martinez"). Martinez is the natural father of Saul Dennis Salas ("Salas"), who is Martinez's son from a prior marriage. Salas was under the age of eighteen at the time of plaintiff's marriage to Martinez.[4] Plaintiff and Martinez divorced in 2006.[5]

On October 5, 2009, over three years after her divorce from Martinez, plaintiff filed a petition with U.S. Citizenship and Immigration Services ("USCIS") seeking an immigrant visa for Salas, who was under the age of twenty-one[6] and does not live in the United States.[7] Plaintiff

---

[1] R. Doc. Nos. 21, 23.
[2] R. Doc. Nos. 27, 29.
[3] R. Doc. No. 21-2, ¶ 1; R. Doc. No. 23-2, at 1.
[4] R. Doc. No. 21-2, ¶ 1; R. Doc. No. 23-2, at 1.
[5] Defendants states that the date of divorce was June 28, 2006, R. Doc. No. 21-2, ¶ 1, but plaintiff states that she divorced Martinez on July 12, 2006, R. Doc. No. 23-2, at 1. The precise date of the divorce is immaterial.
[6] R. Doc. No. 21-2, ¶ 2; R. Doc. No. 23-2, at 1.

sought a visa for Salas under an "immediate relative" classification (which is available to a "child" of a U.S. citizen, including a "stepchild," as discussed below) on the basis that Salas is her stepson.[8] The USCIS, however, denied plaintiff's petition on the ground that the stepparent-stepchild relationship had terminated.[9] Plaintiff timely appealed the decision to the Board of Immigration Appeals ("BIA"), but on July 22, 2011, the BIA dismissed the appeal and upheld USCIS's decision that Salas is not plaintiff's stepchild for the purpose of her immigrant visa petition.[10]

On July 19, 2013, plaintiff filed a complaint asking the Court to overturn the decisions of the BIA and the USCIS and to order defendants to approve plaintiff's immigrant visa petition.[11] Defendants admit that this Court has jurisdiction over the case and that plaintiff exhausted her administrative remedies,[12] but they maintain that Salas does not qualify as an immediate relative and that plaintiff's petition was properly denied.[13]

## LAW AND ANALYSIS

### A.    Review of Agency Decisions

Judicial review of agency action is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* The APA provides that final agency actions are appealable to a U.S. District Court for review. *See id.* § 704. "The [APA] allows a federal court to overturn an agency's ruling 'only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole.'" *Buffalo Marine*

---

[7] *See* R. Doc. No. 21-2, ¶ 4.
[8] R. Doc. No. 21-2, ¶ 2; R. Doc. No. 23-2, at 1.
[9] R. Doc. No. 21-2, ¶ 8; R. Doc. No. 23-2, at 2.
[10] R. Doc. No. 21-2, ¶¶ 9-10; R. Doc. No. 23-2, at 2.
[11] R. Doc. No. 1.
[12] R. Doc. No. 10, ¶¶ 10, 17.
[13] R. Doc. No. 10, at 7-8.

*Servs. Inc. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011) (quoting *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010)).

Review of an agency's interpretation of its own enabling act[14] is guided by the U.S. Supreme Court's two-step framework outlined in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). First, the Court must determine whether the statute at issue is ambiguous. *Khalid v. Holder*, 655 F.3d 363, 366 (5th Cir. 2011) (citing *Chevron*, 467 U.S. at 842-43). "'If the intent of Congress is clear,'—that is, the statute is unambiguous with respect to the question presented—'the court, as well was the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting *Chevron*, 467 U.S. at 842-43). "To determine whether a statute is ambiguous, [courts] employ the traditional tools of statutory construction," including an examination of "the plain language of the statute," while also reviewing the statute as a whole. *Id.* at 366-67 (internal citations and quotation marks omitted).

If the Court determines at step one that the statute at issue is ambiguous, "the analysis proceeds to *Chevron* step two, which asks 'whether the agency's answer is based on a permissible construction of the statute.'" *Id.* at 367 (quoting *Chevron*, 467 U.S. at 843). To determine whether an agency's construction of the statute is permissible, the Court should "consider 'only whether the decision is arbitrary, capricious, or manifestly contrary' to the statute, and may not substitute [its] own judgment 'for a reasonable alternative formulated by the BIA.'" *Id.* (quoting *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005)). In other words, as long as "the [decision of the BIA] is based on a permissible construction of the statute," the Court will uphold it under the second step of *Chevron*. *Mortera-Cruz*, 409 F.3d at

---

[14] An enabling act is "the basic statute of the agency," or "[t]he keystone statute . . . which creates and empowers the relevant program." 1 Charles H. Koch, Jr., Administrative Law & Practice § 2:30 (3d ed.). *Chevron* speaks in terms of "review[ing] an agency's construction of *the statute which it administers*." 467 U.S. at 842 (emphasis added).

253 (quoting *Chevron*, 467 U.S. at 843). Consequently, when a court "find[s] ambiguity as to Congress's intent, review of the agency's construction will be highly deferential." *Id.*

### B.      Immediate Relative Petitions

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, permits U.S. citizens to file petitions for visas on behalf of immediate relatives. 8 U.S.C. § 1154(a)(1)(A)(i). According to plaintiff, "[t]he benefit of immigrating as an immediate relative is that there is no cap, or quota, on the number of visas available each year."[15] The INA defines "immediate relatives" as "the children, spouses, and parents of a citizen of the United States." *Id.* § 1151(b)(2)(A)(i). As relevant to Salas, the INA defines the term "child" as it is used in § 1151 to mean "an unmarried person under twenty-one years of age who is . . . a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred." *Id.* § 1101(b)(1)(B).

The requirements for such immediate relative petitions are detailed in 8 C.F.R. § 204.2. Petitions brought on behalf of any child "must also provide evidence of the claimed relationship." *Id.* § 204.2(d)(2). Specifically with regard to stepchildren, the petition must include a copy of the stepchild's birth certificate "showing the name of the beneficiary's parent to whom the petitioner is married," a marriage certificate "which shows that the petitioner and the child's natural parent were married before the stepchild . . . reached the age of eighteen," and evidence of the termination of any prior marriages of the petitioner and the child's natural parent. *Id.* § 204.2(d)(2)(iv). "When it is established that primary evidence is not available, secondary evidence may be accepted," such as sworn affidavits, and such "[s]econdary evidence will be evaluated for its authenticity and credibility." *Id.* § 204.2(d)(2)(v).

---

[15] R. Doc. No. 26, at 3.

The statute, itself, does not specifically address the effect of divorce on the stepparent-stepchild relationship, but the BIA had occasion to consider the issue in *Matter of Mowrer*, 17 I. & N. Dec. 613 (BIA 1981). In *Mowrer*, the petitioner applied for an immediate relative visa for his stepchildren pursuant to § 1151(b). *Mowrer*, 17 I. & N. Dec. at 613. "In his decision, the District Director noted that the petitioner ha[d] been separated from the beneficiaries' mother since 1974 with no plans for reconciliation, and that the beneficiaries ha[d] lived in the Philippines with their mother since she left this country." *Id.* at 614. "On that basis, the District Director concluded that the petitioner no longer ha[d] a stepparent relationship to the beneficiaries."[16] *Id.*

The BIA reversed the District Director's decision. *Id.* at 615. The BIA stated, "We believe that the appropriate inquiry in cases where there has been a legal separation or where the marriage has been terminated by divorce or death is whether a family relationship has continued to exist as a matter of fact between the stepparent and stepchild." *Id.* However, due to the peculiar facts of *Mowrer*, the BIA did not need to determine whether there was a continuing relationship. The BIA reasoned that because the relationship between the petitioner and the beneficiaries "ha[d] not been terminated as a result of the petitioner's divorce or legal separation from the beneficiaries' mother, we conclude that the appeal should be sustained, and the visa petitioners should be approved." *Id.*; *see also Medina-Morales v. Ashcroft*, 371 F.3d 520, 531 (9th Cir. 2004) (citing *Mowrer* for the proposition that "the BIA has refused to look beyond the fact of a stepparent-stepchild relationship to the strength of that relationship" when a valid marriage exists).; *Matter of Mourillon*, 18 I. & N. Dec. 122, 125 (BIA 1981) ("In the context of

---

[16] In *Mowrer*, there was no question that the stepparent-stepchild relationship did exist at some point in time. *See Mowrer*, 17 I. & N. Dec. at 615 ("Inasmuch as the beneficiaries were once admitted to this country as the petitioner's stepchildren, it has clearly been established that the requisite relationship between them does exist.").

stepparent and stepchild, we recently held that where the parties to the marriage which created that step-relationship have legally separated or where the marriage has been terminated by divorce or death, the appropriate inquiry is whether a family relationship has continued to exist as a matter of fact between the stepparent and stepchild."); *In re Moua*, 2009 WL 2171762 (BIA 2009) (unpublished decision) (applying *Mowrer*); *In re Ansari*, 2009 WL 263057 (BIA 2009) (unpublished decision) (applying *Mowrer*).

C.      *Chevron* **Analysis**

First, the Court must determine whether the statute at issue is ambiguous. *Khalid*, 655 F.3d at 366 (citing *Chevron*, 467 U.S. at 842-43). The crucial issue in this case is the term "child" as it is used in § 1151, which is defined as "an unmarried person under twenty-one years of age who is . . . a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred." 8 U.S.C. § 1101(b)(1)(B).

According to plaintiff, 8 U.S.C. § 1101(b)(1)(B) "clearly states that the only requirement to establish a stepparent relationship is that a child be under the age of eighteen at the time of the marriage creating the relationship. The statute is clear and unambiguous."[17] Plaintiff asserts that "Congress's concern [is] with the age of the child at the time of the marriage and creation of a

---

[17] R. Doc. No. 23-3, at 3. The Fifth Circuit has stated in dicta that "8 U.S.C. § 1101(b)(1)(B) defines 'stepchild' as a child under the age of eighteen at the time the marriage creating the status of stepchild occurred." *Bolvito v. Mukasey*, 527 F.3d 428, 433 n.10 (5th Cir. 2008). This dicta was a comment within the "Factual and Procedural Background" section of the opinion, and it explained why a petition was not filed by a stepfather to adjust the status of his stepdaughter—the stepdaughter "turned eighteen in January 1979, well before her mother married her stepfather in August 1981. Thus, [she] would not have been recognized as a proper beneficiary of a visa petition filed directly on her behalf by her stepfather." *Id.* at 433 & n.10. The Court does not find that this comment should be construed as an authoritative statement on the definition of "stepchild," but rather as a passing comment explaining the reasons behind a factual issue in the case. *See id.* Furthermore, plaintiff does not cite *Bolvito* or make any arguments based on its dicta.

step-relationship."[18] Plaintiff admits that "[t]he statute only discusses limitations on when the relationship can be created[,] not when it will terminate," but plaintiff argues that "[t]his parallels the statutory discussion regarding the creation of the mother-child relationship with biological and adopted children."[19] Plaintiff contends: "Mother-child relationships do not terminate, they may become strained or estranged, but they do not end. Just as the statute recognizes these facts for biological and adoptive children, it recognizes the same for step-children."[20]

Defendants correctly note that "[a]lthough the INA defines the term 'child,' it does not define the term 'stepchild.'"[21] Section 1101(b)(1)(B) simply states that "[t]he term 'child' means an unmarried person under twenty-one years of age who is . . . a stepchild," and that two additional qualifiers apply to stepchildren: "whether or not born out of wedlock" and "provided the child had not reached the age of eighteen years at the time of the marriage creating the status of stepchild occurred." *See* 8 U.S.C. § 1101(b)(1)(B); *see also Verovkin v. Still*, No. 07-3987, 2007 WL 4557782, at *4 (N.D. Cal. Dec. 21, 2007) ("[C]hildren who are eighteen years or older at the time of the marriage are excluded from the definition of 'stepchild[.]'"). Defendants also correctly note, and plaintiffs agree,[22] that the statute does not "explain how the termination of the marriage affects the step-relationship."[23] Because "the statute is silent . . . with respect to the specific issue"—that is, the definition of "stepchild" and the effect of the dissolution of the marriage that created the step-relationship—"the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Accordingly, the Court moves on to step two of the *Chevron* analysis.

---

[18] R. Doc. No. 26, at 5.
[19] R. Doc. No. 26, at 5.
[20] R. Doc. No. 26, at 5.
[21] R. Doc. No. 21-3, at 3.
[22] R. Doc. No. 26, at 5.
[23] R. Doc. No. 27-1, at 2.

The Court must now "ask[] 'whether the agency's answer [as established in *Mowrer*] is based on a permissible construction of the statute.'" *Id.* at 367 (quoting *Chevron*, 467 U.S. at 843). Plaintiff argues that "the only requirement to establish a stepparent relationship is that a child be under the age of eighteen at the time of the marriage creating the relationship."[24] Defendants note that § 1101(b)(1)(B) defines "child" as one who "*is*" a stepchild, and they argue that "[t]his use of the verb 'is' illustrates that Congress intended that the person claiming to be a 'child' under the INA establish that he is presently a child, not that he was a 'child' at some point in the past."[25] The present tense is also used in the regulation governing immediate relative petitions, which states that the petitioner must provide the stepchild's birth certificate that "show[s] the name of the beneficiary's parent to whom the petitioner *is* married." 8 C.F.R. § 204.2(d)(2)(iv) (emphasis added). Defendants argue that this use of the present tense suggests that Congress intends that the requirements for "child" status be presently met when the petition was filed; if Congress had not so intended, it easily could have included language to that effect in the statute.[26]

The common understanding of the word "stepchild" also contemplates a presently existing marriage as the foundation of the relationship. For example, Black's Law Dictionary (9th ed. 2009) defines "stepchild" as "[t]he child of one's spouse by a previous marriage."[27] *See also* "stepchild," Merriam-Webster, http://www.merriam-webster.com/dictionary/stepchild (last visited February 6, 2014) (listing the first definition as "your wife's or husband's child by a past marriage or relationship"). These definitions use the phrases "the child of one's spouse" and

---

[24] R. Doc. No. 23-3, at 3.
[25] R. Doc. No. 21-3, at 7.
[26] *See* R. Doc. No. 21-3, at 7-10.
[27] The definition for "stepchild" appears in the entry for "child." The entry goes on to state that "[a] stepchild is generally not entitled to the same legal rights as a natural or adopted child." Black's Law Dictionary (9th ed. 2009).

"your wife's or husband's child," but if, as petitioner contends, a stepchild-stepparent relationship is one that does not terminate after it is created, one would expect to find a definition to the effect that a stepchild is the child of one's *current or former* spouse. Accordingly, to the extent that any inference can be drawn from the ordinary definition of the word "stepchild," it would weight slightly in favor of (or at the least fail to refute) the BIA's interpretation.

Defendants' position also carries jurisprudential support. The U.S. District Court for the Northern District of Illinois interpreted the meaning of the word "stepchild" in § 1101(b)(1)(B) in *Zacharevskaja v. Chertoff*, No. 04-4542, 2006 WL 2795013 (N.D. Ill. Sept. 28, 2006). In that case, the 19-year-old "[p]laintiff filed an I-360 self-petition for a visa in late 2002, seeking classification as an immediate relative who had been abused by a U.S. citizen or permanent resident step-parent." *Id.* at *2. One of the issues in the case was the meaning of the term "stepchild" as defined in § 1101(b)(1)(B). *Id.* at *5. The defendants argued "that Congress clearly intended that a 'stepchild' . . . be a stepchild who is part of a legally cognizable stepparent-stepchild relationship at the time the self-petition is filed." *Id.* Similarly, the defendants "point[ed] to the consistent use of the present tense with respect to a child's status in both the definition section and the sections applying the definition." *Id.*

The court rejected the plaintiff's "theory that once a stepchild relationship has been created, it never terminates. . . . [T]hat theory is negated by the plain language of the statutes and regulation governing self-petitions by battered children." *Id.* at *6. The court concluded that the plaintiff's "proposed construction—that all stepchildren be children for purposes of self-petitioning as immediate relatives, even if the parent and the stepparent have voluntarily terminated the relationship, or the alien parent and citizen stepparent's marriage has been found

to be a sham marriage—goes against the Congressional basis for requiring a bona fide marriage before allowing preferential admission of an alien and his or her family." *Id.* at *7.

Plaintiff's position is substantially the same as the argument rejected by the court in *Zacharevskaja*. *See id.* at *7. Just as in *Zacharevskaja*, plaintiff's argument that "the *only* requirement to establish a stepparent relationship is that a child be under the age of eighteen at the time of the marriage creating the relationship" is inconsistent with the language of the statute and the commonly accepted meaning of the word "stepchild."[28] The statute imposes an additional age requirement on stepchildren, but it does not define the term "stepchild" or obviate the requirement that status as a "child" be satisfied when the petition is filed. *See* 8 U.S.C. § 1101(b)(1)(B); *see also* Margaret M. Mahoney, *Stepfamilies in the Federal Law*, 48 U. Pitt. L. Rev. 491, 517 (1987) ("Congress has created an additional age requirement for stepchildren. To qualify for nonquota status, a stepchild must be under age eighteen at the time of the stepmarriage.").

Because the term "stepchild" is not defined in the statute, and because the statute requires that one "is" a "stepchild" at the time the petition is filed in order to qualify for immediate relative status, the Court finds that BIA's interpretation of the term "stepchild" as used § 1101(b)(1)(B) is a permissible one. *See Khalid*, 655 F.3d at 366-67; *see also* Mahoney, *supra*, at 533-34 ("The distinction drawn in the current law between cases in which the stepmarriage has ended and other stepfamily situations is not unreasonable."). Accordingly, the Court must defer to BIA's interpretation and apply the rule set forth in *Mowrer*.

---

[28] *See* R. Doc. No. 23-3, at 3 (emphasis added).

### D.     The BIA's Ruling

Having concluded that the agency's interpretation in *Mowrer* is entitled to deference pursuant to *Chevron*, the Court must now review the agency's ruling. The BIA's legal conclusions are reviewed de novo. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). The BIA's factual findings are reviewed pursuant to the "substantial evidence" standard, meaning that the Court will "accept the factual findings of the BIA 'unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise.'" *Id.* (quoting *Mikhael v. INS*, 115 F.3d 299, 304 (5th Cir. 1997)).

Defendants contend that "[t]he agency did not abuse its discretion in denying Herzog's petition for immigrant status on behalf of Salas" because "Herzog failed to demonstrate that, from the date of her divorce from Salas's father to the date of her petition, a family relationship continued to exist as a matter of fact between her and Salas."[29] Defendants contend that plaintiff "had the burden before the agency of providing evidence sufficient to show, by a preponderance of the evidence, that Salas was her 'stepson,'"[30] but that her affidavits and other documentary evidence fell short of carrying that burden.[31]

Plaintiff makes two principal arguments against the BIA's ruling. First, plaintiff contends that the agency misapplied *Mowrer* and 8 C.F.R. § 204.2(d)(2)(iv). Plaintiff argues that the regulation requires that only three documents be submitted—"a copy of the beneficiary's birth certificate, a copy of the marriage certificate to the natural parent, and evidence of termination of any prior marriages"—and because she submitted those documents, "the BIA denied her

---

[29] R. Doc. No. 21-3, at 10.
[30] R. Doc. No. 27-1, at 5.
[31] R. Doc. No. 21-3, at 10-12; R. Doc. No. 27-1, at 5.

application based on an evidentiary standard not contemplated by the regulation."[32] Second, plaintiff argues that even if the evidentiary standard applied by the BIA is upheld, she established that she maintained the requisite relationship with Salas.[33]

First, the Court finds that the BIA properly applied the correct standard. Plaintiff is correct that 8 C.F.R. § 204.2(d)(2)(iv) specifically mentions three documents that constitute the "[p]rimary evidence for a stepchild." The first is a "birth certificate . . . showing the name of the beneficiary's parent to whom the petitioner *is* married." *Id.* (emphasis added). As discussed above, the use of the present tense contemplates a marriage in existence at the time the petition is filed; because plaintiff and Martinez are divorced, she *is not* married to the beneficiary's parent, and her petition fell short of the regulation's requirements. *See id.* Accordingly, the BIA did not err in requiring her to produce additional evidence pursuant to *Mowrer.*

Second, the Court reviews the BIA's factual findings pursuant to the "substantial evidence" standard, meaning that the Court will "accept the factual findings of the BIA 'unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise.'" *Lopez-Gomez*, 263 F.3d at 444 (quoting *Mikhael*, 115 F.3d at 304). In denying plaintiff's petition, the BIA stated:

> [T]he petitioner has not provided any documentary evidence of such an ongoing relationship, as correctly noted by the Director. Although an affidavit by the petitioner states that a loving relationship was reestablished on an unspecified date in 2008 or 2009 between herself and the beneficiary, there is no evidence of any ongoing correspondence, financial support, or other ongoing involvement in the life of the beneficiary. The only evidence she provided shows that the family lived together from approximately 2001 through 2003. Therefore, we are not persuaded that a family relationship existed between the petitioner and the beneficiary on the date the visa petition was filed.

---

[32] R. Doc. No. 23-3, at 4.
[33] R. Doc. No. 26, at 8-11.

. . . .

On appeal, the petitioner has submitted new evidence. However, we generally do not consider new evidence submitted for the first time on appeal.[34]

Plaintiff admits that she was estranged from Salas for some time: "In an effort to allow herself, Mr. Martinez and Mr. Salas to cope with the situation[,] Ms. Herzog thought it best to distance herself for a time from Mr. Salas."[35] She argues that "[h]er actions, under the circumstances, were completely reasonable" and that "Defendants fail to consider the reality of this family and their circumstances."[36] Plaintiff states, "It is unfair for the Defendants to stand in judgment of the validity of a familial relationship created by legal marriage when the same judgment is not applied to familial relationships created by biology or adoption."[37]

In defendant's motion for summary judgment, defendants address all of the evidence that plaintiff provided—including affidavits from Salas, plaintiff's ex-husband, and plaintiff herself, along with other documentary evidence—and they explain with particularity why the evidence fails to show the requisite relationship.[38] Defendants' explanations are consistent with the ruling of the BIA.[39] Accordingly, because the BIA's factual findings were reasonable and supported by substantial evidence, the Court cannot substitute its judgment for that of the BIA. *See Lopez-Gomez*, 263 F.3d at 444.

---

[34] R. Doc. No. 21-4, at 6. The BIA cited *Matter of Soriano*, 19 I. & N. Dec. 764 (BIA 1988), and *Matter of Obaigbena*, 19 I. & N. 533 (BIA 1988), for its refusal to consider the supplemental evidence. Plaintiff does not contest the BIA's decision to exclude that evidence. *See* R. Doc. Nos. 23-3, 26.

[35] R. Doc. No. 26, at 10.

[36] R. Doc. No. 26, at 10.

[37] R. Doc. No. 26, at 10.

[38] R. Doc. No. 21-3, at 10-12.

[39] *Compare* R. Doc. No. 21-4, at 5-6 *with* R. Doc. No. 21-3, at 10-12.

**CONCLUSION**

"With respect to each of these legislative policy distinctions, it could be argued that the line should have been drawn at a different point and that the statutory definitions deny preferential status to parents and children who share strong family ties." *Fiallo v. Bell*, 430 U.S. 787, 798 (1977). However, the law is clear "that these are policy questions entrusted exclusively to the political branches of our Government, and we have no judicial authority to substitute our political judgment for that of the Congress." *Id.* Accordingly,

**IT IS ORDERED** that plaintiff's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **GRANTED**. All of plaintiff's claims in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 12, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**